**HILLS TRANSPORTATION COMPANY**

**v.**

**The UNITED STATES.**

**No. 336–72.**

United States Court of Claims.

March 20, 1974.

Curtis M. Caton, San Francisco, Cal., attorney of record for plaintiff, and Robert E. Borton, Sausalito, Cal., for plaintiff.

Paul A. Zoss, Washington, D. C., with whom was Acting Asst. Atty. Gen. Irving Jaffe, for defendant.

Before DAVIS, SKELTON and NICHOLS, Judges.

ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

NICHOLS, Judge.

This case is before the court on cross motions for summary judgment. There is no fact issue requiring trial. The plaintiff is a California corporation in the trucking business. In 1952 the Post Office Department designated plaintiff as "messenger" for conveyance of mails on Route No. 0432, between the Post Office and A & N Docks at Oakland Inner Harbor, California. In 1958 it designated plaintiff, likewise, as "messenger" for Route No. 0189, between Oakland Docks ("A & N") and Oakland Pier. Such designations are a kind of informal contracting peculiar to the Post Office, and remain in effect for an indefinite period, but are terminable at the will of either party. The above designations remained in effect during the times pertinent to this litigation, though they have been amended from time to time. The controversy here is over the right of the defendant to a retroactive price reduction because of its belief that part of the service contracted for in an amendment to each designation was not being performed.

By Act of September 1, 1954, Pub.L. 763, 83d Cong., 2d Sess., the Congress added to the Act authorizing the employment of mail messengers in the postal service (then 39 U.S.C. § 578) a new provision reading:

\* \* \* \* \* \*

The Postmaster General may, in his discretion and under such regulations as he may prescribe, readjust the compensation of the holder of any contract for the performance of mail-messenger service on account of increased or decreased costs occasioned by changed conditions which could not reasonably have been anticipated at the time such contract was made.

The 1964 recodified 39 U.S.C. § 6403 authorized "informal agreements for mail messenger service without term" and the above quoted language from Pub.L. 763, *supra,* was placed in § 6423(b), but without the provision for regulations, which was dropped without change of meaning in view of § 501.

A Congressional conference report explains this provision as intended to relieve the Postmaster General from having to cancel and readvertise in case changes in the cost of service indicated the fairness of a change in the rate of compensation. U.S.Code Congressional and Adminstrative News, p. 3861 (1954).

Both parties agree that the regulations issued pursuant to the above authority are found in successive editions of the Post Office or Postal Manual, and before 1960 did not provide that adjustments could only be made with the consent of the contractor. By Transportation Transmittal Letter 41, of December 23, 1960, such a provision was added to the Manual, § 526.1, and has remained in effect since. *See also* 26 Fed.Reg. 11636–11637 (1961).

By orders on different dates in 1962, defendant allowed to plaintiff an additional payment of 96¢ per container for "handling of full conex containers". The orders specifically refer to 39 U.S. C. § 6423(b) as their authority for issuance. The record shows that these payments were asked for and ordered to be made because plaintiff persuaded the postal authorities it was expending additional time and effort at military piers because plaintiff's drivers had to obtain defendant's forklifts and operate them themselves to remove the conex containers (big shipping vans) from plaintiff's trucks. The parties have been diligent in developing the facts as to the genesis of these orders. Defendant says they were intended to provide compensation for the physical labor of plaintiff's employees, as if "handling" read "man handling". Plaintiff says they were to provide for expenditure of time as well as effort, and that "handling" in general

means all operations plaintiff performed respecting conex containers. In either case, it was something that had to be done to deliver the conexes, as the contracts already required. We can assume, *arguendo,* that defendant is right, and do so in the decision that follows.

In 1966 plaintiff ceased operating forklifts for this purpose at military piers, the duties having been taken over by military personnel. It has not been established to what extent, if at all, this reduced the time spent by plaintiff's drivers and trucks at the piers. The officials of the Post Office Department learned of the change in 1968, stopped paying the 96¢ premium, and by letter dated January 22, 1969, notified plaintiff it was retroactively assessed an overpayment of $28,443.84. Plaintiff paid it under protest. . Plaintiff claims the amount with interest. The Post Office Department Board of Contract Appeals held it had no jurisdiction of the dispute because the contracts had no "disputes" clause. The Comptroller General has rejected the claim. (B–168032, April 14, 1972). Defendant did not, in asserting the overpayment, make any reference to 39 U.S.C. § 6423(b), or regulations issued pursuant thereto, and apparently they were not called to the Comptroller General's attention.

We start with the proposition that departmental regulations are law governing the award and interpretation of contracts, and provide useful and valuable guidelines for the resolution of all Government contract cases. Winston Bros. Co. v. United States, 458 F.2d 49, 198 Ct.Cl. 37 (1972). In order to apply to a contract, the regulation need not be physically incorporated in the contract, and it need not even have been in effect when the contract was awarded. Bethlehem Steel Corp. v. United States, 423 F. 2d 300, 191 Ct.Cl. 141 (1970). We did not proclaim this to be universally true, but regarded it as a reasonable interpretation when the regulation was remedial, intended to afford the contractor safeguards against arbitrary agency determinations. The 1960 change in the Post-

al Manual is of that character. It would be unreasonable to exclude it from application to then extant messenger designations in view of their informal character, necessarily relying on departmental regulations for most of their body, as well as their frequent long duration. We hold, therefore, that the 1960 regulation applied equally to messenger designations awarded before as well as after the regulation date, and defendant has bound itself not to effectuate pay adjustments to such messengers, to reflect increased or decreased costs, without the messenger's consent.

■ Defendant, however, argues that a case such as it views this one to be is not within the regulation. By defendant's interpretation of the contract, it is not a matter of an increased or decreased cost, but of an item of work simply not done. But, in 1962 defendant invoked § 6423(b) and, by implication, the regulation thereunder, to justify the 96¢ extra compensation. It is clear defendant did not then consider it was amending the contracts to call for additional work. § 6423(b) was not by its terms a vehicle for that. It considered it was paying for the unforeseen cost of work already required. Except for § 6423(b), defendant could have made adjustment only via cancelling the designation and advertising a new designation. It is with singular inconsistency that defendant now says the same section is inapplicable to cancellation of the same 96¢ premium. If the question was one of cost in 1962, it was one in 1969. Defendant was certainly under the impression that plaintiff enjoyed a reduction in its costs as a result of the military operating the forklift after 1966, constituting a changed condition. Had it chosen, it could have established the net cost reduction and negotiated for a reduction in that amount. Since it had a

remedy under the contract, it was acting in breach thereof when it unilaterally and retroactively cut the contract rate without invoking contract procedures.

It may be thought strange that defendant should have bound itself not to adjust downward for a changed condition as defined in the statute, except by consent. The explanation appears to be that defendant always had the option to cancel and readvertise. According to the Congressional report cited, *supra*, the mail messenger service was a matter of small operations for the smaller communities. Reductions were generally for decreased volume of mail, which the Post Office would know of. An unobserved reduction of cost would be a rarity and was not provided for, it seems. It may, however, be noted that with respect to Star Route Contracts, the restriction of changed condition adjustments to those made by consent is statutory. 39 U.S.C. § 6423(a). The Post Office evidently just did not wish to involve its contract disputes machinery in this class of case.

The result we arrive at may seem unfair to defendant, but it is quite likely retroactive entire deletion of the 96¢ charge was unfair to plaintiff. The contract provided means by which a result fair to both sides could possibly have been negotiated. Since defendant, desiring a change, could have invoked these contract procedures, and failed to do so, the breach of contract and resultant loss falls on it.

■ According to the petition, plaintiff desires to be awarded interest, but interest is not awardable in this class of case.

Defendant's motion for summary judgment is denied. Plaintiff's cross motion for summary judgment is allowed. Judgment is entered for plaintiff in the amount of $28,443.84.