# In the United States Court of Federal Claims

No. 11-157C

(Filed: August 14, 2013)

```
*********************************

                              )     Alleged partial breach of contracts for
BAY COUNTY, FLORIDA,          )     utility services provided by Bay County to
                              )     Tyndall Air Force Base; Bay County as an
          Plaintiff,          )     independent regulatory body; DFARS §
                              )     241.101; invocation of the Christian
     v.                       )     doctrine; applicability of FAR § 54.241-7
                              )     rather than § 54.241-8; partial summary
UNITED STATES,                )     judgment
                              )
          Defendant.          )
                              )
*********************************
```

George R. Mead, II, Moore, Hill & Westmoreland, Pensacola, Florida, for plaintiff. With him on the briefs was Charles F. Beall, Jr., Moore, Hill & Westmoreland, Pensacola, Florida.

Antonia R. Soares, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Stuart F. Delery, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, and Deborah A. Bynum, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. Of counsel was Christopher S. Cole, Trial Attorney, Commercial Law & Litigation Directorate, Department of the Air Force.

## OPINION AND ORDER

LETTOW, Judge.

Bay County, Florida ("Bay County" or "the County") seeks monetary relief for an alleged breach of two contracts by which the Air Force ("Air Force" or "the government") is purchasing water and sewer services from the County. One of the contracts states that for unregulated utility services, the Air Force is empowered to approve or reject potential rate changes proposed by the utility. There is no clause in either contract describing the procedure for addressing rate changes set by independently regulated utilities. Bay County contends that it acts as an independent regulator of utility services, and that its rate changes apply to the Air Force. The Air Force counters that Bay County acts as an unregulated utility, and, as such, the rate-change provision in one of the contracts is triggered, along with an implied inclusion of the same provision in the other contract, meaning that acceptance of rate changes by the Air Force is discretionary. Bay County alleges that as an outcropping of this dispute over the terms of the contracts, the Air Force has failed to pay contractually mandated utility rates since 2007 and now owes Bay County the balance of unpaid invoice charges, totaling approximately $850,000.

Pending before the court are Bay County's and the government's motions for summary judgment filed pursuant to Rule 56 of the Rules of the Court of Federal Claims ("RCFC"). The motions have been fully briefed and a hearing was held on June 5, 2013. The government filed a post-hearing supplemental submission on June 12, 2013.

## BACKGROUND

Bay County is a subdivision of the State of Florida and is empowered by state law to "[p]rovide and regulate" such utilities as water and sewage for the County. Florida Statutes, Section 125.01(k)(1); *see* Compl. ¶¶ 10-11. Acting on that authorization, for some years it has contracted with Tyndall Air Force Base ("Tyndall" or "the Air Base") for the provision of such services to the Air Base, which is located in Bay County. *See, e.g.*, Compl., Ex. 8 (1966 Water Contract). Unlike certain other military bases in the country, Tyndall contracts directly with Bay County and purchases utilities at wholesale rates. Compl. ¶¶ 30-31.[1]

The two contracts at issue are for purchase of sewage and water services, and were entered in 1985 and 1988, respectively. *See* First Statement of Undisputed Facts, Ex. C (1985 Sewage Contract) ("Sewage Contract"); Compl., Ex. 7 (1988 Water Contract) ("Water Contract").[2] The Water Contract had its genesis in an earlier contract entered in 1966, under

---

[1]Bay County historically has provided potable water to Tyndall Air Base at a "wholesale" rate which also applies to all of the municipalities in Bay County. *See* First Statement of Undisputed Facts, Aff. of Paul Lackemacher (Jan. 30, 2012) ¶¶ 12-16, ECF No. 17-4. "Bay County's other wholesale customers are by contract . . . entitled to the lowest rate charged to any other wholesale customer, including Tyndall." Aff. of Ashley Stukey (Feb. 8, 2013) ¶ 8, ECF No. 53-1. Accordingly, the result in this case will have a bearing on the rates charged by Bay County to all of its municipal customers.

[2]Bay County filed a Statement of Undisputed Facts in support of its first motion for summary judgment on January 30, 2012. *See* ECF No. 17. The government did not respond to the Statement, nor did it file its own statement of undisputed facts in connection with a cross-motion for summary judgment. *See* Def.'s Mot. for Summary Judgment (Jan. 30, 2012), ECF No. 18. The government did, however, file an extensive documentary appendix with its cross-motion. *Id.* Thereafter, because of perceived deficiencies in the record, Bay County's motion and the government's cross-motion were denied without prejudice to renewal. *See* Order of Sept. 25, 2012, ECF No. 40; Order of Jan. 15, 2013, ECF No. 45.
Subsequently, the County and the government filed the renewed motions for summary judgment which are now before the court, and the County filed a Second Statement of Undisputed Facts in support of its renewed motion. *See* Second Statement of Undisputed Facts (Feb. 8, 2013), ECF No. 55. The government again has failed to respond directly to the assertions of fact in the Second Statement, although, as before, it submitted a lengthy documentary appendix to its second motion for summary judgment. *See* App. to Def.'s Renewed Mot. for Summary Judgment (Jan. 11, 2013), ECF Nos. 44-1 and 44-2. Thus, pursuant to RCFC 56(c)(1) and (e)(2), the court considers facts asserted and supported in the Second Statement to be undisputed for purposes of the pending cross-motions for summary judgment, to the extent that they are not specifically contested or challenged by the government in its briefing.

2

which contract Bay County increased its rates fourteen times over fifteen years, without any apparent acrimony between the parties. Second Statement of Undisputed Facts ¶¶ 22-23. In 1988, the old water contract was superseded by the current contract, which is the one at issue in this case. *See* Water Contract. The new Water Contract contained the following "change of rate" clause:

> No increase shall be requested in the contract rate unless the Contractor has placed into effect a general rate increase to all of his customers under similar conditions of service. If the Contractor has placed into effect a general rate decrease, a corresponding decrease in the contract rate shall be made.

*Id.* ¶ 3.

The Sewage Contract, made effective in 1985, contains a substantially similar clause regarding rate changes. Sewage Contract, Additional Provisions ¶ 2(b). That clause is preceded by an additional restriction on changes of rate, specifying a process of negotiation prior to any implementation:

> At the request of either party to this contract with reasonable cause, the rates set forth herein shall be renegotiated and the new rates shall become effective as mutually agreed — provided that any rates so negotiated shall not be in excess of rates to any other customer of the Contractor under similar conditions of service.

*Id.*, Additional Provisions ¶ 2(a).

In December 1994, the Federal Acquisition Regulations were amended to create a regulatory requirement that certain pre-established clauses be included in utility service contracts such as the water and sewage contracts at issue here. 48 C.F.R. ("FAR") § 41.501. The new requirements in the FAR effectively replaced the earlier "change of rates" provision that had been commonly used, not only in the contracts at issue in this case but in many other contracts for utility services provided to federal installations.[3] The requirements specify that "under the prescribed conditions," "[t]he contracting officer shall insert clauses substantially the same as the clauses listed" in the FAR. FAR § 41.501(d). Two different "change of rate" clauses are provided, one prescribed for use in connection with regulated services, and the other for unregulated services. *See* FAR §§ 41.501(d)(1) and (2). The text of those clauses is found at FAR §§ 52.241-7 and 52.241-8, respectively. Where regulated services are being supplied, the

---

The underlying documentation supporting both of Bay County's Statements is appended to the First Statement, and was not re-filed with the court, and any citations to those documents are to those accompanying the First Statement.

[3]The change-of-rate provisions had acquired an interpretive gloss through a decision of the Federal Circuit in *City of Tacoma v. United States*, 31 F.3d 1130 (Fed. Cir. 1994).

utility is instructed to notify the government of application to and approval by the regulatory body of any changes in rates or terms and conditions of service, and the government is obligated to accept the change. FAR § 52.241-7.[4] In the case of unregulated services, rate changes may only be accomplished through negotiation between the utility and the government. FAR § 52.241-8.[5]

In 1997, Bay County and the Air Force executed a bilateral modification to the Sewage Contract, conforming various provisions of the original contract to those newly required by the FAR. *See* Compl., Ex. 6 (1997 Sewage Contract Amendment). Among the provisions included in the amendment is one concerning changes in rates, specifically the provision prescribed for use in contracts with unregulated utility service providers, FAR § 52.241-8. Compl., Ex. 6 at 5. Whether the Water Contract was also so amended appears to be a mystery to the parties; no such amendment has been provided to the court. *See* Hr'g Tr. at 7:19-22 (June 5, 2013)[6] ("[O]f

---

[4]The relevant text of the change-of-rate provision in FAR § 52.241-7 states:

> This clause applies to the extent services furnished under this contract are subject to regulation by a regulatory body. The Contractor agrees to give . . . written notice of (1) the filing of an application for change in rates or terms and conditions of service concurrently with the filing of the application and (2) any changes pending with the regulatory body as of the date of the contract award. Such notice shall fully describe the proposed change. If, during the term of this contract, the regulatory body having jurisdiction approves any changes, the Contractor shall forward to the Contracting Officer a copy of such changes within 15 days after the effective date thereof. The Contractor agrees to continue furnishing service under this contract . . . and the [g]overnment agrees to pay for such service at the higher or lower rates as of the date when such rates are made effective.

FAR § 52.241-7(a).

[5]The relevant text of the change-of-rate provision in FAR § 52.241-8 states:

> (a) This clause applies to the extent that services furnished hereunder are not subject to regulation by a regulatory body.
> (b) After ____ [*insert date*], either party may request a change in rates or terms and conditions of service, unless otherwise provided in this contract. Both parties agree to enter in negotiations concerning such changes upon receipt of a written request detailing the proposed changes and specifying the reasons for the proposed changes.

FAR § 52.241-8(a), (b).

[6]Further citations to the hearing held on June 5, 2013 will omit the date.

course, it's clear that the 1997 modification as to the [W]ater [C]ontract does not exist. It may have been destroyed or lost during the squadron reorganization a few years back."); Def.'s Renewed Mot. for Summary Judgment (Jan. 11, 2013) ("Def.'s Renewed Mot.") at 15, ECF No. 44 ("[A] comparable bilateral modification incorporating FAR subpart 52.241-8 into the [W]ater [C]ontract has not been located.").

In 2000, Bay County increased the cost of water and notified the Air Force of the increased rate; the Air Force acceded to the rate increase and paid invoiced amounts in full under the new rate. *See* Second Statement of Undisputed Facts ¶ 26. In 2003, the Sewer Contract was formally amended to reflect a rate increase, to which the Air Force did not object. *Id.* ¶ 35.

On October 1, 2007, Bay County adopted Resolution No. 2794, by which it increased wholesale water rates by $0.55 per 1000 gallons and authorized further increases each subsequent October 1st at three percent (or the percentage change in the Consumer Price Index, whichever was lower) per year. *See* Second Statement of Undisputed Facts ¶¶ 26, 27. The Air Force refused to recognize this rate increase and continued to pay at the previous rate. *Id.* ¶ 27. On May 5, 2009, Bay County adopted another resolution, No. 2920, setting a five-year *pro forma* rate scheme, effective October 1, 2009. *Id.* ¶ 28. Resolution No. 2920 and its accompanying increases were likewise disregarded by the Air Force, which continued to pay the pre-2007 rate for its water utility services at Tyndall. *See id.* ¶ 30.

On November 29, 2009, and October 27, 2010, the Air Force unilaterally modified the Water Contract to reflect modest increases over the pre-2007 rate which it had previously been paying. Second Statement of Undisputed Facts ¶¶ 29, 31. Both increases fell short of the amounts invoiced by Bay County at the rate which had been set for wholesale customers, including Tyndall and municipalities in the County. *Id.* ¶¶ 30-31; *see also supra* n.1. At the time of the most recent increase by the Air Force's unilateral action, the wholesale rate set by Bay County was $1.79 per 1000 gallons, while the rate the Air Force determined it would pay was $1.41 per 1000 gallons, leaving a disparity of $0.38 per 1000 gallons. *Id.* ¶ 31.

With respect to the Sewage Contract, Bay County notified the Air Force of proposed (and ultimately adopted) rate increases on June 16, 2009. *See* Def.'s Renewed Mot. at 5. The government has disputed these increases and declined to pay invoiced amounts reflecting the higher rates, as it has done with the water rate increases. *Id.*

After unsuccessfully attempting to recover the amounts allegedly owed by the Air Force for utility services through a claim to the Air Force's Contracting Officer,[7] Bay County filed suit in this court on March 14, 2011. A first round of motions for summary judgment was filed in early 2012, but those motions were dismissed without prejudice on September 25, 2012. The parties filed renewed motions for summary judgment in January and February 2013, and

---

[7]Bay County filed its certified claim with the Contacting Officer on April 19, 2010. Second Statement of Undisputed Facts ¶ 42. That claim was denied on January 20, 2011. *Id.* ¶ 43.

briefing, a hearing, and a supplemental submission completed presentation of the cross-motions to the court.

## STANDARD FOR DECISION

Summary judgment is appropriate when the pleadings, affidavits, and evidentiary materials filed in a case reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute is one that "may reasonably be resolved in favor of either party." *Id.* at 250. The absence of such genuine disputes must be demonstrated by the moving party; in this respect, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In the case currently before the court, each party has filed a motion for summary judgment. Because cross-motions for summary judgment are pending, the court must evaluate each motion on its own merits and "tak[e] care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987).

In support of their motions, the parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." RCFC 56(c)(1)(A). Summary judgment will be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

This necessarily is a suit for partial breach of contract because the Water Contract and Sewage Contract continue in effect. "If the injured party elects to or is required to await the balance of the other party's performance under the contract, his claim is said . . . to be one for damages for partial breach [rather than for a total breach]." *Restatement (Second) of Contracts* § 236 cmt. b (1981); *see also Indiana Mich. Power Co. v. United States*, 422 F.3d 1369, 1374 (Fed. Cir. 2005) (applying *Restatement (Second) of Contracts* § 236)). In essence, "[a] partial breach is '[a] claim for damages . . . based on only part of the injured party's remaining rights to performance." *Indiana Mich.*, 422 F.3d at 1374 (quoting *Restatement (Second) of Contracts* § 236(2)). "[W]here there has been no repudiation [*e.g.*, no total breach], the plaintiff can recover damages for his injury only to the date of the writ. . . . [H]e must treat the breach as only 'partial.'" 10 Arthur L. Corbin, *Corbin on Contracts* § 956 (interim ed. 2007). Bay County's claim is premised upon the Air Force's partial breach of the Water Contract and Sewage Contract. If Bay County prevails, its damages will be limited to those incurred prior to the date of suit. *Indiana Mich.*, 422 F.3d at 1376. To succeed in its suit for partial breach of contract, Bay County must establish the four elements of breach: "(1) a valid contract between the parties, (2) an obligation or duty arising under the contract, (3) a breach of that duty, and (4) damages caused by the breach." *Steinberg v. United States*, 90 Fed. Cl. 435, 444 (2009) (citing *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989)).

6

# ANALYSIS

The parties are generally in agreement as to the factual underpinnings of the case. Neither side contests the fact that express contracts were formed between Bay County and Tyndall for the utility services at issue. There is no dispute over whether Bay County approved and gave notice to Tyndall of its rate changes as they were adopted. They also agree that Tyndall has refused to pay the invoiced amounts in full since 2007. The parties disagree as to their respective duties regarding determining, approving, or paying changed rates. The dispute turns on (1) whether Bay County is an independent regulatory body and governed by FAR § 54.241-7, or a non-independent regulatory body as in FAR § 54.241-8; and (2) if Bay County's utilities are independently regulated, whether the inclusion of FAR § 54.241-8 in the sewage contract is sufficient to negate or waive Bay County's change-of-rate privileges as an independently regulated utility. The second issue need only be reached if the first issue is resolved in Bay County's favor.

Bay County contends that its utilities are independently regulated and looks to FAR § 54.241-7 to argue that it is entitled to set rates free from any obligation to negotiate rates with Tyndall. *See* Pl.'s Second Mot. for Summary Judgment (Feb. 8, 2013) ("Pl.'s Renewed Mot.") at 2-4, ECF No. 54. The government counters that Bay County does not qualify as an independent regulatory body, and consequently any changes of rate must be agreed by the Air Force to be valid, obviating any claims of breach on the part of the government for failing to pay in full rates it had not accepted. Def.'s Renewed Mot. at 7.

## A. *Bay County's Status*

The Defense Federal Acquisition Regulation Supplement ("DFARS") applies and contains an explicit definition of the contested terms:

> *Independent regulatory body* means the Federal Energy Regulatory Commission [("FERC")], a state-wide agency, or an agency with less than state-wide jurisdiction when operating pursuant to state authority. The body has the power to fix, establish, or control the rates and services of utility suppliers.
>
> *Non[-]independent regulatory body* means a body that regulates a utility supplier which is owned or operated by the same entity that created the regulatory body, e.g., a municipal utility.

48 C.F.R. ("DFARS") § 241.101. Bay County is neither FERC nor a state-wide agency. *See* Fla. Const. art 8 § 1. Therefore, if Bay County is to be considered an independent regulatory body, it must satisfy the third criterion or fail in its suit. Bay County must show that it is an agency with less than state-wide jurisdiction operating pursuant to state authority.

Bay County is a Florida county, and under Florida law it is considered both an agency of the state and an independent local actor, depending upon the type of action involved. *See Amos v. Mathews*, 126 So. 308, 321 (Fla. 1930) ("[T]heir existence as local entities for local purposes

7

as well as their existence as legal political divisions of the state is recognized by the Constitution. . . . While the county is an agency of the state, it is also under our Constitution, to some extent at least, an autonomous, self-governing, political entity with respect to *exclusively* local affairs."). Florida counties act as agencies of the state when they perform acts delegated to them by the state, *e.g.*, assessing and imposing taxes for county purposes. *See Whitney v. Hillsborough Cnty.*, 127 So. 486, 493 (Fla. 1930) ("The delegation of the power [to collect county taxes] under such circumstances is tantamount to the state empowering, not a mere statutory board possessing no governmental status, but a constitutionally recognized governmental agency to act for it in matters of local taxation."); *Collier Cnty. v. State*, 733 So. 2d 1012, 1019 (Fla. 1999) ("[T]he [c]ounty has no inherent power to tax, but obtains that authority only from the constitution and general law.").

When Bay County acts to regulate its utility rates, it is exercising a power delegated to it by the State of Florida, as contrasted to an inherent power over exclusively local affairs:

> Any of the several counties of the state which may hereafter come under the provisions of this chapter as hereinafter provided is hereby authorized and empowered . . . (3) *To fix* and collect *rates*, fees and other charges *for the service and facilities furnished by any such water supply system or* water system improvements *and sewage disposal system* or sewer improvements and to fix and collect charges for making connections with the water system of the county.

Fla. Stat., tit. 11, ch. 153.03 (emphasis added); *see also* Fla. Stat., tit. 11, ch. 125.01(1) ("The legislative and governing body of a county shall have the power to . . . [p]rovide and regulate *waste and sewage collection and disposal* [and] water and alternative water supplies.") (emphasis added).

The government contends that Bay County must be a non-independent regulatory body because "its utilities are owned and operated by the very same entity that establishes their rates — namely, the Bay County Board of County Commissioners." Def.'s Renewed Mot. at 22. It presses the proposition that "[t]o come within the definition of an 'independent regulatory body,' Bay County, as regulator[,] would have to be independent from Bay County as utility supplier." Def.'s Reply in Support of its Renewed Mot. for Summary Judgment and Response to Pl.'s Cross-Mot. for Summary Judgment (Apr. 25, 2013) ("Def.'s Reply") at 2, ECF No. 64. This argument by the government is based upon the broad purposes of the FAR and DFARS and does not comport with a plain reading of DFARS § 241.101. "[B]road purposes" do not trump specific and plain regulatory language. *See Board of Governors of the Fed. Reserve Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 373 (1986) (refusing to accept an argument based upon "[a]pplication of 'broad purposes' of legislation at the expense of specific provisions"). Instead, "[i]f the [regulation] is clear and unambiguous, 'that is the end of the matter.'" *Id*. at 368 (quoting *Chevron U.S.A. Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)). To be a non-independent regulatory body, Bay County would have to "regulate[] a utility supplier which is owned or operated by the same entity that created the regulatory body." FAR § 241.101. Definitionally, the relevant relationship is not between the owner or operator of

the utility and its regulator, but rather between the owner or operator and the entity which *created* the regulator. In the present case, Bay County owns, operates and regulates the utility, but was itself created by the State of Florida and, specifically, was created as a regulator by the State of Florida. In sum, Bay County is an independent regulatory body under the definitions in the DFARS because the County has less than statewide regulatory jurisdiction but exercises that regulatory jurisdiction "pursuant to state authority." DFARS § 241.01.

## B. *Negation of Independent Regulatory Privileges*

The government argues that, regardless of Bay County's classification under the criteria in the DFARS, Bay County effectively conceded its status as a non-independent regulatory body by accepting the terms of the original Sewage Contract and the subsequent bilateral modification incorporating FAR § 52.241-8 in 1997. Def.'s Renewed Mot. at 15.[8] As a result of this asserted concession and waiver, the government contends that Bay County is bound by the change-of-rate clause set out in FAR § 52.241-8, and must accede to negotiation and approval by the Air Force prior to raising its utility rates on either contract. Bay County, in turn, submits that such an arrangement would violate Florida law, and thus could not be a reasonable interpretation of the contract. Pl.'s Renewed Mot. at 10-11 (citing Fla. Stat., tit. 11, ch. 153.11 (specifying rate-setting procedures by which the county commission revises rates absent negotiation)). The court need not reach the question of whether Bay County could legally have contracted as an unregulated utility because the government's contention that Bay County actually contracted away its status as an independent regulatory body is unavailing.

The government argues that Bay County waived its potential status as an independent regulatory body by including FAR § 54.241-8 in the Sewage Contract — ignoring the limitation of Subsection (a) on application, *viz.*, "[t]his clause applies to the extent that services furnished hereunder are not subject to regulation by a regulatory body." FAR § 52.241-8(a); *see* Hr'g Tr. 11:11 to 12:1. Pointing to the principle that this court must avoid contract interpretations that render the FAR or contract terms superfluous, the government contends that the only way to give meaning to the Sewage Contract is to treat Bay County as a non-independent regulatory body. Hr'g Tr. 11:13 to 15:3. In making this argument, the government implicitly urges that a contractual provision that is inapplicable by its own terms must take precedence over the FAR's requirements. The court cannot accede to such a proposition.

When a contract subject to the FAR incorporates improper terms of the FAR, the correct provisions of the FAR control. *See S.J. Amoroso Const. Co. v. United States*, 12 F.3d 1072, 1075 (Fed. Cir. 1993); *G.L. Christian & Assocs. v. United States*, 312 F.2d 418, 426 (Ct. Cl.

---

[8]As the government puts it, "Bay County's status as a 'non[-]independent regulatory body' is a settled issue." Def.'s Renewed Mot. at 15 (heading; capitals omitted); Def.'s Reply at 3 (same).

Although the government admits that no corresponding modification to the Water Contract has been located, it contends that such a modification must exist because "it would be irrational to conclude that the parties contemplated that Bay County's status as a non-independent regulatory body as reflected in the . . . [S]ewer [C]ontract . . . would not apply to the [W]ater [C]ontract." Def.'s Renewed Mot. at 15.

1963), *mot. for rehearing and reargument denied*, 320 F.2d 345 (Ct. Cl. 1963). "Under the so-called *Christian* doctrine, a mandatory contract clause that expresses a significant or deeply ingrained strand of procurement policy is considered to be included in a contract by operation of law." *S.J. Amoroso*, 12 F.3d at 1075. In *S.J. Amoroso*, as here, an improper clause was substituted for a proper clause. *Id.* As *S.J. Amoroso* held, "[a]pplication of the *Christian* doctrine turns not on whether the clause was intentionally or inadvertently omitted, but on whether procurement policies are being 'avoided or evaded (deliberately or negligently) by lesser officials.'" *Id.* (citing *G.L. Christian & Assocs.*, 320 F.2d at 351). The proper clause was consequently given effect. *Id.* at 1077.

In this instance, inclusion of the clause prescribed for unregulated utilities constitutes such an impermissible deviation. *See* FAR § 1.401 ("*Deviation* means . . . [t]he omission of any solicitation provision or contract clause when its prescription requires its use . . . [or] [t]he use of a solicitation provision or contract clause . . . if such use is inconsistent with the intent, principle, or substance of the prescription or related coverage on the subject matter in the FAR."). The text of the FAR is unambiguous in its requirement for inclusion of the proper change of rate clause: "The contracting officer *shall insert clauses* substantially the same as the clauses listed below in solicitations and contracts under the prescribed conditions." FAR § 41.501(d) (emphasis added). The prescribed condition for inclusion of FAR § 52.241-7 is that the utility services "are subject to a regulatory body." *Id.* As established *supra*, Bay County qualifies as an independent regulatory body, and as such, FAR § 52.241-7 is a required term of the utility contract. Correspondingly, FAR § 52.241-8 is inappropriate. Although deviations may be authorized by the agency head for individual contract actions, such a deviation must be documented and justified in the contract file. FAR § 1.403. No such documentation or justification is present here.

Accordingly, the *Christian* doctrine applies and binds the contracting parties to the mandatory contractual term. *See G.L. Christian & Assocs.*, 312 F.2d at 426 ("We are not, and should not be, slow to find the standard [regulation-mandated] article incorporated, as a matter of law, into plaintiff's contract if the [r]egulations can fairly be read as permitting that interpretation."). "Such regulations are law, binding on the contract parties" when otherwise applicable to the contract, *Dravo Corp. v. United States*, 480 F.2d 1331, 1333 (Ct. Cl. 1973), and "need not be physically incorporated into the contract," *First Nat'l Bank of Louisa, Ky. v. United States*, 6 Cl. Ct. 241, 244 (1984) (citing *Hills Transp. Co. v. United States*, 492 F.2d 1394, 1396 (Ct. Cl. 1974)); *see also Bethlehem Steel Corp. v. United States*, 423 F.2d 300, 305 (Ct. Cl. 1970) (holding that the regulation need not be in effect when the contract was awarded so long as adoption of the regulation was remedial and intended to afford safeguards to the contractor). The court determines as a matter of law that the clause pertaining to independently regulated utilities, FAR § 52.241-7, is incorporated into the contract in place of the improper clause, FAR § 52.241-8, which is physically present.[9]

---

[9]FAR § 52.241-8 would in any event not control the utility service contracts in this case because the provision is conditional and the condition is not triggered. *See* FAR § 5.241-8(a) ("This clause applies to the extent that services furnished hereunder are not subject to regulation by a regulatory body.").

10

In sum, the physical presence of FAR § 52.241-8 in the Sewage Contract (and its inferred presence in the Water Contract) does not negate Bay County's actual status as an independent regulatory body. The Sewage Contract and Water Contract incorporated FAR § 52.241-7 as a matter of law, and nothing in the parties' contractual implementation would permit the substitution of FAR § 52.241-8. On the record at hand, Bay County has adhered to the requirements of FAR § 52.241-7 and Florida law in setting and revising its utility rates. The Air Force's unilateral modifications of the Water Contract in 2009 and 2010, *see supra* p. 5, are invalid and cannot be given effect.

## CONCLUSION

There are no genuine issues of material fact in this case which preclude summary judgment. Bay County, through its state-delegated regulatory power, approved and gave notice to the government of utility rate increases. The FAR and DFARS explicitly permit Bay County, as an independent regulatory body, to revise rates without resorting to negotiation with Tyndall Air Force Base. In light of the Air Force's admitted refusal to remit all of the invoiced amounts under these legally enforceable rates, no rational trier of fact could find in the government's favor. Accordingly, the government's renewed motion for summary judgment is DENIED, and the plaintiff's renewed motion for summary judgment is GRANTED as to liability.

Bay County has requested relief in the form of damages "for the balance of unpaid invoiced charges certified in its Claim, and accruing thereafter." Compl. ¶ 40. Because the breach is partial and continuing, its damages are limited to those incurred prior to filing suit in this court. *Indiana Mich.*, 422 F.3d at 1376. The parties have neither briefed nor stipulated to the particular amount of damages accrued during the pertinent time period. Consequently, the determination of damages is reserved for further proceedings.[10]

The court requests that the parties confer and then provide a joint status report on or before September 10, 2013, setting out a proposed plan and schedule for further proceedings related to damages.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge

---

[10]Pursuant to the Contract Disputes Act, Bay County will be entitled to interest on the final amount, commencing from the date of the Air Force Contracting Officer's receipt of Bay County's certified claim for amounts due under these contracts. *See* 41 U.S.C. § 7109(a)(1). Bay County retains the right to sue again at a later date for damages related to this same breach which are not encompassed by the result in this action. *See Indiana Mich.*, 422 F.3d at 1378 (citing Restatement (Second) of Judgments, § 26 (1982)).