# United States Court of Appeals
# for the Federal Circuit

―――――――――

**BAY COUNTY, FLORIDA,**
*Plaintiff-Appellee*

v.

**UNITED STATES,**
*Defendant-Appellant*

―――――――――

2014-5149

―――――――――

Appeal from the United States Court of Federal Claims in No. 1:11-cv-00157-CFL, Judge Charles F. Lettow.

―――――――――

Decided: August 11, 2015

―――――――――

CHARLES FRANKLIN BEALL, JR., Moore, Hill & Westmoreland, P.A., Pensacola, FL, argued for plaintiff-appellee. Also represented by GEORGE R. MEAD, II.

ANTONIA RAMOS SOARES, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by JOYCE R. BRANDA, ROBERT E. KIRSCHMAN, JR., DEBORAH A. BYNUM; CHRISTOPHER S. COLE, Commercial Law Litigation, Air Force Legal Operations Agency, JB Andrews, MD.

―――――――――

Before PROST, *Chief Judge,* CLEVENGER, and MOORE,
*Circuit Judges.*

CLEVENGER, *Circuit Judge.*

The United States appeals the decision of the United States Court of Federal Claims, holding that Bay County, Florida is an independent regulatory body and may revise rates in utility contracts without resorting to negotiations with the Air Force. *Bay County v. United States*, 112 Fed. Cl. 195, 203–04 (2013). This court has jurisdiction under 28 U.S.C. § 1295(a)(3) (2012). Because the Court of Federal Claims correctly applied the regulatory definitions of independent and nonindependent regulatory bodies, we affirm.

I

Bay County, Florida ("Bay County" or "County") owns and operates Bay County Utilities, a department which provides water and sewer services throughout the County. The Bay County Board of Commissioners ("Board") is responsible for establishing the rates and charges for these services.

In 1966, the United States Air Force ("Air Force") and Bay County entered a contract under which the County agreed to provide water services to Tyndall Air Force Base ("the water contract"). The parties entered into a similar contract for the provision of sewer services in 1985 ("the sewer contract"). Early iterations of both contracts contained clauses requiring the parties to renegotiate any new rates, and provided that new rates would become effective upon mutual agreement.

A

In 1994, the Federal Acquisition Regulations ("FAR")[1] were amended to require certain standardized clauses be included in utility service contracts. As it pertains to the present appeal, the FAR articulate two clauses for adopting new rates in existing utility contracts. There is a negotiated rates clause at FAR 52.241-8. When the government is contracting with an *unregulated* utility, the contract should include this clause requiring the parties to negotiate new rates. 48 C.F.R. § 41.501(d)(2) (2014). On the other hand, there is a clause for when the government agrees to pay the rate approved by the regulator—without further negotiation. This clause, FAR 52.241-7, is to be included when the government is contracting with a *regulated* utility. 48 C.F.R. § 41.501(d)(1).[2]

---

[1]    Federal Acquisition Regulations are at title 48 of the Code of Federal Regulations.

[2]    In 1997, the Air Force and Bay County agreed to a bilateral modification of the sewage contract. At that time, the parties incorporated FAR 52.241-8—the negotiated rates clause—into the agreement. The parties have not been able to find a copy of the water contract reflecting amendments in light of the FAR. The Court of Federal Claims held that because Bay County satisfies the regulatory definition of "independent regulatory body," as a matter of law FAR 52.241-7—the no further negotiation clause—must be deemed to be incorporated into both contracts. *Bay County*, 112 Fed. Cl. at 203. The parties do not dispute that on appeal. The only issue is whether Bay County is an independent or nonindependent regulatory body under the regulations. The parties do not challenge that the same FAR clause should be incorporated into both contracts, depending only on Bay County's status as a regulator.

The Department of Defense ("DoD") has adopted a modified version of the FAR. The Defense Federal Acquisition Regulation Supplement ("DFARS") incorporates slightly different, but substantially similar, language to satisfy these FAR requirements for utility service contracts. If the utility providing service to the DoD is subject to oversight by an *independent regulatory body* ("IRB"), then the government includes the no further negotiation clause at FAR 52.241-7. 48 C.F.R. § 241.501(d)(1). However, if a utility is unregulated or subject to a *non-independent regulatory body* ("NIRB"), then the parties have to negotiate any change in rate. 48 C.F.R. § 241.501(d)(2) (requiring that DoD include the negotiated rates clause from FAR 52.241-8 in NIRB contracts).

B

In 2007 and 2009, Bay County adopted resolutions to increase wholesale water rates. The Air Force ignored those increases, and continued to pay at the pre-2007 rate. In 2009 and 2010, the Air Force unilaterally modified the water contract, and incorporated new rates. However, the Air Force's self-imposed rates were still lower than the rates set by Bay County. Similarly, in 2009 Bay County notified the Air Force that the County was increasing sewer rates. Again, the Air Force refused to pay those higher rates, and instead instituted a unilateral contract modification in 2010 to moderately increase sewer rates.

On April 8, 2010, Bay County submitted two Contract Disputes Act ("CDA") claims to recover the unpaid balance on the Air Force's utility contracts. The contracting officer denied Bay County's claims, and concluded that Bay County is an unregulated utility. Therefore, according to the contracting officer, while Bay County is allowed to propose new rates, the parties have to negotiate rate changes and incorporate them as contract modifications. Bay County has alleged breach of both contracts, because

the Air Force has failed to pay the Bay County-set utility rates since 2007. Bay County asserted a balance of unpaid invoices of approximately $850,000.

The present dispute turns on whether Bay County is an IRB or an NIRB. If, as the government contends, Bay County is an NIRB, then the parties must negotiate any rate changes in the water and sewer contracts. If, on the other hand, Bay County is an IRB, then the government must pay utility rate increases fixed by the Board.

The Court of Federal Claims held that Bay County is an IRB, because under Florida law it is an agency of the state and Florida authorized the County to regulate utilities. *Bay County*, 112 Fed. Cl. at 201. Therefore, Bay County was allowed to revise utility rates without negotiating with Tyndall Air Force Base. *Id.* at 203. The Court of Federal Claims granted summary judgment in favor of Bay County, and reserved the determination of damages for a later proceeding, *id.* at 204, which was concluded before this appeal, *see Bay County v. United States*, 117 Fed. Cl. 131 (2014) (damages calculation decision). We agree with the Court of Federal Claims that Bay County is an IRB under the DFARS definitions.

## II

We review the Court of Federal Claims' legal conclusions without deference, *Vaizburd v. United States*, 384 F.3d 1278, 1282 (Fed. Cir. 2004), and its grant of summary judgment de novo, *AmeriSource Corp. v. United States*, 525 F.3d 1149, 1152 (Fed. Cir. 2008).

This is a straightforward case of regulatory interpretation. The DFARS defines both of the relevant terms:

Independent regulatory body means the Federal Energy Regulatory Commission [("FERC")], a state-wide agency, or an agency with less than state-wide jurisdiction when operating pursuant to state authority. The body has the power to fix,

establish, or control the rates and services of utility suppliers.

Nonindependent regulatory body means a body that regulates a utility supplier which is owned or operated by the same entity that created the regulatory body, e.g., a municipal utility.

48 C.F.R. § 241.101.

Based on the plain meaning of these definitions, Bay County is clearly an IRB. Bay County has been *authorized by the State* of Florida to *fix, establish, and control the rates and services of utility suppliers*. Specifically, each Florida county has the power to: (1) "[p]rovide and regulate waste and sewage collection and disposal, [and] water and alternative water supplies . . . ," Fla. Stat. § 125.01(1)(k)(1), as well as (2) "fix and collect rates, fees and other charges for the service and facilities furnished by any such water supply system or . . . sewage disposal system . . . ," Fla. Stat. § 153.03(3).

This delegation of state authority also makes Bay County "an agency with less than state-wide jurisdiction." Neither party can reasonably dispute that Bay County has less than state-wide jurisdiction. Oral Arg. at 3:24–3:59, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/2014-5149/all. And, in its capacity of regulating utilities—as a county acting pursuant to state authority—Bay County is an agency of the State of Florida. *See Amos v. Mathews*, 126 So. 308, 321 (Fla. 1930) ("[A] county in the performance of certain functions is an agency or arm of the state . . . ."). Therefore, Bay County plainly satisfies the regulatory definition of an IRB.

Moreover, Bay County clearly falls outside the definition of an NIRB. To fit the NIRB definition, there must be a single entity which both created the relevant regulatory body and owns or operates the regulated utility supplier. In this case, Bay County is the regulatory body and it

owns the utility supplier. There is no entity that created one and owns the other. The State of Florida created Bay County. *See* Fla. Const. art. VIII, § 1. And Bay County, not Florida, owns and operates the utility supplier. Therefore, Bay County is not an NIRB under the DFARS definition.

The government suggests it is improper to rely on state law to resolve this case. Br. of Def.-Appellant at 22–23, 51–52; *see also Roedler v. Dep't of Energy*, 255 F.3d 1347, 1351 (Fed. Cir. 2001) (federal common law governs contracts of the United States).

Not only is it proper, but it is necessary to refer to state law when applying these regulations. The regulations are written in terms of state authority and jurisdiction. The Court of Federal Claims was, and this court is, correct to look at Florida law to decide whether Bay County was created by the state and whether it is acting pursuant to state authority. *Cf. Baltimore Gas & Elec. Co. v. United States*, 133 F. Supp. 2d 721, 738 (D. Md. 2001) ("[T]he federal government has absorbed state law, including utilities law, to supply the regulatory standards necessary and appropriate for the operation and maintenance of the electricity and natural gas distribution systems at Fort Meade . . . .").

### III

Since the terms of the regulation are unambiguous, and the Court of Federal Claims correctly applied the definitions of "independent regulatory body" and "nonindependent regulatory body," no further inquiry is required. *Glover v. West*, 185 F.3d 1328, 1332 (Fed. Cir. 1999). However, the government makes four arguments against the plain meaning of the regulations, and we respond to each briefly.

A

The government's overarching argument that Bay County lacks the requisite independence relies on DFARS policy and historical context. The government explains that DoD complies with decisions of IRBs as a matter of comity, and it is DoD policy that rates set by independent bodies are determined to be fair and reasonable. 48 C.F.R. § 241.201. "This policy does not extend to nonindependent regulatory bodies." *Id.*

To that end, the government suggests that regulated utilities are only those regulated by statewide public utility commissions ("PUC"). Therefore, the government contends that in Florida, the only IRB is the Florida Public Service Commission. Br. of Def.-Appellant at 31–32. If utilities lack independent oversight from a statewide PUC, then DoD and the Air Force have traditionally treated them as unregulated and required new rates be negotiated. This policy is reflected in the pre-DFARS version of the water and sewer contracts—they both originally contained negotiated rates clauses.

The rationale for this policy is, according to the government, obvious. "The federal government does not want its utility providers to have authority to set their own rates, without any 'independent' review." Br. of Def.-Appellant at 37 (quoting Jeffrey A. Renshaw, *Utility Privatization in the Military Services: Issues, Problems, and Potential Solutions*, 53 A.F.L. Rev. 55, 100 (2002)). That concern is directly implicated in the case of county and municipal utilities where the utility supplier and the rate-setting body are indistinguishable.

We do not challenge the logic of this policy. The DoD may have good reasons for treating a statewide PUC differently from a municipal or county legislative body when it comes to accepting fixed rates. That policy does not, however, alter the plain language of the regulations. An IRB can have "less than state-wide jurisdiction," 48

C.F.R. § 241.101, and therefore cannot be limited to statewide PUCs. Similarly, the NIRB definition does not say that utilities owned by local governments are unregulated. *See id.* We decline to rewrite the regulation to convert Bay County to a nonindependent body where the text of the regulations define Bay County as independent.

B

The government also argues we should defer to the Air Force's interpretation of the regulatory definitions.[3] According to the government, the interpretation is consistent with DFARS policy and the Air Force has historically treated Bay County as an NIRB. Under these circumstances, the government asserts, the DoD interpretation of its own regulation should be entitled to deference. Br. of Def.-Appellant at 28 (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997)).

The court should defer to agency interpretation only when a "regulation is ambiguous and the agency's interpretation is neither plainly erroneous nor inconsistent with the regulation." *Gose v. U.S. Postal Serv.*, 451 F.3d 831, 836 (Fed. Cir. 2006); *see also Christensen v. Harris County*, 529 U.S. 576, 588 (2000) ("[D]eference is warranted only when the language of the regulation is ambiguous."); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945) ("[A]dministrative interpretation . . . becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation."). Here we have

---

[3] In this case, the Air Force is interpreting a regulation promulgated not by it, but by DoD. Bay County argues that deference is limited to interpretations presented by the promulgating agency. We do not reach this argument, because this is an unambiguous regulation and the agency interpretation is inconsistent with the regulatory text.

an unambiguous regulation and the agency interpretation is inconsistent with it. Therefore, deference is not appropriate.

First, the regulatory definitions at issue are not ambiguous. The definition of an NIRB unequivocally describes the relationship between three units: an entity which created a regulator and owns a utility. Similarly, this case does not demonstrate ambiguity in the definition of an IRB. Deferring to the Air Force here would essentially allow the government to rewrite the regulatory definitions under the guise of interpretation. *See Christensen*, 529 U.S. at 588 (deferring to an agency position where the regulation is not ambiguous "would be to permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation").

Second, the Air Force's interpretation is plainly inconsistent with the regulations. As explained in the previous section, Bay County satisfies the definition of an IRB. It does not fit the definition of an NIRB. Because the Air Force's contrary interpretation is inconsistent with the regulatory text, we will not defer to it. *Gose*, 451 F.3d at 840 (where an agency's proposed interpretation is "*per se* inconsistent with the regulation [it] may be accorded no deference").

## C

Next, the government argues that Bay County falls within the definition of an NIRB. To that end, the government faults the Court of Federal Claims for failing to consider the plain meaning of "nonindependent," points to the paradigm example of a "municipal utility," and argues that Bay County created the Board of Commissioners as a regulatory body. None of these arguments succeed in establishing Bay County is an NIRB, given the text of the regulations in suit.

As to plain meaning, the government suggests the Court of Federal Claims erred when it focused exclusively on the words contained in the DFARS definitions, without considering the plain meaning of the terms that make up the defined phrase. It argues that the meaning of "independent" and "nonindependent" should also have informed the court's interpretation of these terms. Br. of Def.-Appellant at 42. According to the government, Bay County cannot be an IRB because it is plainly not independent—it both owns the utility supplier and sets its rates.

The court refers to the ordinary meaning of terms only when they are not defined elsewhere in a regulation. *Cf. Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995) ("When terms used in a statute are undefined, we give them their ordinary meaning."); *Terry v. Principi*, 340 F.3d 1378, 1382–83 (Fed. Cir. 2003) ("In the absence of an express definition, we presume that Congress intended to give these words their ordinary meanings."). By including a specific definition for "independent" and "nonindependent," the agency chose to refine what those terms mean in this regulation. We refer to the regulatory definition, and not the dictionary, to interpret the terms.

The government also highlights the fact that a "municipal utility" is an example of an NIRB; and because Bay County has a municipal utility, the government suggests it must be an NIRB. We disagree. The example does not overwhelm the rest of the definition. This example shows that municipal utilities might meet the definition of an NIRB. The example does not indicate that every municipal utility is necessarily an NIRB.

According to the government, Bay County also qualifies as an NIRB because it created the Board of Commissioners, and the Board sets the utility rates. Therefore, the Board is an NIRB—created by the County which owns the utility supplier.

This argument fails because Bay County did not create its own Board of Commissioners. The Board is Bay County's governing body, and the County acts through the Board. Both the Board and the County are creatures of Florida law. The Florida Constitution divides the state into counties, and provides that each county shall have a board of commissioners as its governing body. Fla. Const. art. VIII, § 1. Moreover, Florida law defines "county" and "board" as one and the same. Fla. Stat. § 125.011(1) ("Use of the word 'county' within the above provisions shall include 'board of county commissioners' of such county."). The government's attempt to parse the County and the Board are not persuasive, and this argument strains the concept of "created" too far in an effort to wedge Bay County into the NIRB definition.

D

Finally, the government argues that Bay County is not an IRB. Relying on the canon of *ejusdem generis*, the government argues the Court of Federal Claims should have read the regulation differently. The definition explains that FERC, state agencies, and agencies with less than state-wide jurisdiction are IRBs. When read in the context of that list, the government suggests that "an agency with less than state-wide jurisdiction when operating pursuant to state authority" does not refer to *any* agency with state authorization. Instead, the phrase should be read in context to refer to agencies that are *similar to* FERC and statewide PUCs. When read in that context, the government contends that Bay County is not an IRB. Br. of Def.-Appellant at 50–51.

We do not think *ejusdem generis* applies here, and instead take the phrase "an agency with less than state-wide jurisdiction when operating pursuant to state authority" at face value. *Ejusdem generis* is a tool for determining "the correct meaning of words when there is uncertainty. Ordinarily, it limits general terms which

follow specific ones to matters similar to those speci-
fied . . . ." *Gooch v. United States*, 297 U.S. 124, 128
(1936). "[T]he inference embodied in *ejusdem generis* [is]
that Congress remained focused on [a] common attribute
when it used [a] catchall phrase." *Ali v. Fed. Bureau of
Prisons*, 552 U.S. 214, 225 (2008). We do not need such a
tool in this case. First, this definition does not lend itself
to application of *ejusdem generis* because the "an agency
with less than state-wide jurisdiction" phrase is not a
general term following a list of specific items. *See id.*

Second, *ejusdem generis* is used to avoid giving gen-
eral phrases at the end of a list such broad meaning that
they swallow the specific words preceding them. For
example, to understand "fishing rods, nets, hooks, bob-
bers, sinkers, and other equipment," it would be useful to
apply *ejusdem generis*. "Other equipment" should be
interpreted to give meaning to the previous words—it
refers to other fishing equipment, and reading it broadly
to include all types of equipment would render the preced-
ing list meaningless. *See CSX Transp. Inc. v. Ala. Dep't of
Revenue*, 562 U.S. 277, 294–95 (2011) (first quoting *Unit-
ed States v. Aguilar*, 515 U.S. 593, 615 (1995) (Scalia, J.,
concurring in part dissenting in part); then citing *Circuit
City Stores, Inc. v. Adams*, 532 U.S. 105, 114–15 (2001)).
In this case, there is no risk that "an agency with less
than state-wide jurisdiction when operating pursuant to
state authority" will render the rest of the definition
superfluous. This definition identifies three distinct types
of IRBs. We do not need to rely on our understanding of
two of those entities to give meaning to the third.

## CONCLUSION

The regulations do not support the Air Force's inter-
pretation that Bay County is an NIRB. It should not be a
matter of great difficulty for the DoD to amend the regu-
lations to provide for definitions that accomplish its policy
goals. This court is not authorized to misinterpret the

regulatory language to achieve those goals. Because the Court of Federal Claims correctly interpreted the regulatory text, we affirm.

## AFFIRMED

No costs.